1830.

Canajoharie
Church
v.
Leiber.

---

THE CANAJOHARIE AND PALATINE CHURCH *vs.* LEIBER
and others.

Where a person contracts with the members of a religious community to convey land as the site of a church, and the society are afterwards regularly incorporated under the act, and the church is built on the premises, the court will decree a conveyance of the property to the corporation, according to the agreement previously entered into with the individual members of the society.

But where the person holding the legal estate has expended his own money in building the church previous to the incorporation of the society, the court will not compel him to give up his legal claim to the estate until his equitable claim is satisfied.

IN 1818, Leiber and Ehle, two of the defendants, owned a tract of land in the village of Canajoharie, including the church lot in question in this cause. The defendants and divers other persons at that place associated for the purpose of building a church, and Leiber and Ehle agreed to give the lot for that object. Leiber, and Failing the other defendant in this cause, together with three others, were appointed a building committee, and to obtain and collect subscriptions for the church. During the building of the house, Leiber and Failing expended $667,33 over and above the amount of their subscriptions, which was credited and admitted to be due by the associates on the 5th of June, 1819. In December thereafter the society was incorporated by the name of "The Canajoharie and Palatine Church." Leiber and Failing have frequently since the incorporation applied to the trustees to pay or secure to them the above debt, which the trustees refused to do. Leiber, who considered himself under an equitable obligation to obtain the payment of Failing's share of the debt, conveyed one half of his legal estate in the church lot to him to secure such payment. Subse-

February 16th.

quently Leiber became entitled to the whole debt, by assignment from Failing. After repeated ineffectual attempts to obtain either payment or security from the corporation, a partition suit between the defendants was commenced in the Montgomery common pleas, and an order for a sale of the premises was obtained in that court. The complainants then filed their bill in this cause to restrain the proceedings in the partition suit, and for a conveyance of the church lot from the defendants to the corporation.

The defendants Ehle made no claim to the premises, and consented to convey his share thereof to the complainants. The other defendants consented to convey their half of the lot upon receiving payment of the debt due them as two of the building committee; and they averred that they had always been ready and willing to make such conveyance upon receiving such payment or security for the same. The cause was heard on pleadings and proofs.

*M. T. Reynolds,* for the complainants.

*S. D. Hewlett,* for Leiber and Failing.

The Chancellor. Although the agreement to convey this lot was made before the society was incorporated, yet in equity the agreement ought to be carried into effect with the corporation, which now represents the rights of the original associates. This principle is recognized in a late case before the supreme court of the United States. (*Beatty* v. *Kurtz,* 2 Peter's Rep. 566.) The defendants do not deny this equitable principle; but as they have no legal remedy against the complainants for a debt which became due before they were a corporation, they insist it is inequitable that the corporation should have a conveyance of the lot without paying or securing that claim. It is pretty certain that the defendants cannot recover this debt against the corporation in a court of law. The authorized agents of the complainants have never agreed to pay it since they were incorporated, but on the contrary have uniformly refused to do so. I think it is perfectly equitable and just that it should be paid by the corporation, who have had the benefit of the labor and ad-

vances of the defendants. A religious corporation, of all others, should be the last to insist upon a claim so manifestly unjust. The defendants were justified in using their legal title to the property to compel the corporation to do equity; and it would be contrary to the settled principles of this court to give the complainants relief on any other terms.

The defendant Ehle has no claim to retain the legal title to his share of the premises, and must therefore forthwith convey the same to the complainants. The defendants Leiber and Failing must also convey to them the other undivided half of the premises, provided the complainants within six months after this decree to pay to Leiber or his solicitor the said debt and interest thereon from the 5th June, 1819, and his costs of this suit and in the partition suit to be ascertained and taxed by one of the vice-chancellors or a taxing master, and also pay to the defendant Failing or his solicitor his costs, to be ascertained and taxed in like manner. If the complainants neglect to pay the said several sums within that time, the undivided half of the property must be sold by a master, and the amount paid out of the proceeds of the sale. And if the proceeds are not sufficient to pay the whole amount of debt and costs, including the costs of this suit, Liber and Failing are to have execution against any other property of the corporation for the costs of this suit, or for so much thereof as remains unpaid on such sale.